Sergeant Ronnie J. WIGGINS, 245–82–9108, United States Army, Petitioner,

v.

Colonel Donald P. GREENWALD, Commander, United States Army Correctional Activity, and the United States of America, Respondents.

Miscellaneous Docket No. 1985/5 (CM 446655)

U.S. Army Court of Military Review.

4 April 1985.

Released for Publication 23 May 1985.

Captain Richard J. Anderson, JAGC, argued the cause for petitioner. With him on the pleadings were Colonel William G. Eckhardt, JAGC, Lieutenant Colonel Paul J. Luedtke, JAGC, and Captain Rita R. Carroll, JAGC.

Captain Dean C. Berry, JAGC, argued the cause for respondents. No pleadings were required of the appellee.

Before SUTER, RABY, and NAUGHTON Appellate Military Judges.

## OPINION OF THE COURT ON PETITION FOR EXTRAORDINARY RELIEF [1]

PER CURIAM:

■ This case is currently before the Court pursuant to a Petition for Extraordinary Relief in the nature of a Writ of Mandamus, in which the petitioner requests that the Court direct administrative credit for a 13-day period of pretrial restriction which the petitioner asserts was tantamount to confinement. *See United States v. Mason,* 19 M.J. 274 (C.M.A.1985) (summary disposition); *United States v. Allen,* 17 M.J. 126 (C.M.A.1984). The application of such credit would render the petitioner's release from confinement almost immediate.[2] Having found the instant petition an appropriate vehicle for seeking the requested relief, *see Dettinger v. United States,* 7 M.J. 216 (C.M.A.1979); *Thacker v. United States,* 16 M.J. 841 (N.M.C.M.R.1983); *see also Kelly v. United States,* 1 M.J. 172 (C.M.A.1975); *Gragg v. United States,* 10 M.J. 732 (N.C.M.R.), *rev'd,* 10 M.J. 180 (C.M.A.1980) (summary disposition); *Hart v. Kurth,* 5 M.J. 932 (N.C.M.R.1978), we will consider the merits of the petitioner's request for administrative credit.

1. Petition for Extraordinary Relief denied by the U.S. Court of Military Appeals, 20 M.J. 196, Daily Journal, 29 April 1985.

2. The petitioner's current minimum release date is 19 April 1985. If administrative credit were applied, the petitioner would be released from confinement on 6 April 1985.

■ As this issue was not raised at trial, the facts available to the Court concerning the nature of the petitioner's pretrial restriction are derived from: a letter to the petitioner from his former detachment commander, Subject: Restriction Guidelines, dated 27 June 1984 (Appendix A); an electronic message from the petitioner's former detachment commander (Cdr, 32d AADCOM, Darmstadt, Germany, Message No. 291520Z Mar. 1985, Subject: *United States v. Wiggins*) (Appendix B); and an electronic message from the petitioner (Cdr, 1st Infantry Division (Mech), Fort Riley, KS, Message No. 041300Z Apr. 1985) (Appendix C). Based upon the facts presented in these documents, we conclude that the petitioner's pretrial restriction was not tantamount to confinement and that therefore no administrative credit is warranted.

In arriving at this conclusion, we have found the following facts: during the 13-day period in issue, the petitioner was restricted to the first floor of Building 4029 (a barracks measuring approximately 300 feet by 75 feet) which contained showers, a laundry room, latrines, two unit phones, no personal phones, and a day room equipped with chairs, couches, a color television and video player, video games, magazines, and a microwave oven; the petitioner was permitted to leave this floor only with the permission of the detachment commander or first sergeant, except as necessary for out-processing, and only with an escort in the grade of E–5 or above, thus requiring an escort during out-processing and for trips to such places as the legal office, dining facility, chapel, and medical facility; the petitioner was permitted neither to make nor to receive phone calls in the barracks; the petitioner was permitted visitors only in the day room and other common areas; on duty days, the petitioner was required to sign in every two hours unless out-processing (during which he was escorted) and every hour during evenings until he went to bed; on weekends, the petitioner was required to sign in every four hours; although petitioner claims that the charge of quarters (CQ) conducted hourly bed checks during the nighttime, it is unclear whether such bed checks occurred because the CQ was able to see the entire hallway and could therefore monitor those exiting billet rooms;[3] and the petitioner was required neither to perform military duties nor to attend formations or physical training.[4]

We find that the restraint imposed upon petitioner was lawful. We further find that the conditions of restraint, though substantial, were less onerous than those which were found tantamount to confinement in *United States v. Mason, supra; United States v. Schilf,* 1 M.J. 251 (C.M.A. 1976); *United States v. Weisenmuller,* 38 C.M.R. 434 (C.M.A.1968); *United States v. Smith,* 20 M.J. 528 (A.C.M.R.1985); *United States v. DiMatteo,* 19 M.J. 903 (A.C.M.R. 1985); *United States v. Acireno,* 15 M.J. 570 (A.C.M.R.1982); and *United States v. Carmel,* 4 M.J. 744 (N.C.M.R.1978). For a discussion of the applicable law pertaining to this issue, see *United States v. Smith, supra.* Consequently, we find that the petitioner is not entitled to credit for the 13-day period in question.

Accordingly, the petitioner's petition for extraordinary relief is denied.

---

3. We find resolution of this issue unnecessary to our decision because the petitioner's locomotion would have been equally inhibited by bed checks as by the CQ's hallway monitoring.

4. The petitioner was out-processing during this period.

## APPENDIX A

CCE–S–SE–DET                                Restriction Guidelines

Wiggins, Ronnie J. Pvt.          Commander                          27 June 84
245–82–9108                      Det 2, 44th Signal Battalion
Det 2, 44th Signal Battalion     APO NY 09175
APO NY 09175

1. The purpose of this DF is to outline in writing those restrictions verbally imposed on you by LTC Wright on 20 June 84.

2. Imposed restrictions are as follows.

   a) You are to sign in to the unit (on the CQ log) hourly.

   b) Once you retire to your quarters, an hourly bed check will be made by the CQ.

   c) You are restricted to the unit barracks (Bldg. 4029).

   d) You are not to leave Cambrai Fritsch Kaserne unless specifically authorized by the First Sergeant or the Commander. No other individual can authorize you to leave the Kaserne (to include the CQ).

   e) You will not leave the barracks unless you are under escort by at least one (1) E–5.

   f) You will leave the barracks only to go to the 440th Signal Battalion Consolidated Mess. You will be escorted to meals by an E–5.

   g) You will not enter any establishment which sells alcohol.

   h) You are not to frequent any clubs, You are not to consume any alcohol, to include drinking in the barracks.

   i) If you require medical attention, you will obtain permission from the Commander or the First Sergeant to leave the Kaserne. You also will be escorted by an E–5. If you must go to the 97th General Hospital, you will be escorted by an E–5 and a seperate driver.

   j) If you wish to attend religious services off post, you will obtain permission from the Commander or First Sergeant and be escorted by an E–5.

   k) You are not to use military telephones for personal purposes nor receive personal calls.

   l) Exceptions to these restrictions can only be authorized by the Commander or First Sergeant.

3. Violation of these restrictions will subject you to processing for pre-trial confinement.

## APPENDIX B

. . . . . . . . . . . . . . . . . . . . . .

IMMEDIATE     · U N C L A S S I F I E D ·

. . . . . . . . . . . . . . . . . . . . . .

TOR=088 1743   TOD=088   174318   MSG NBR–04E3–0D8E

DAAUZYUW RUFTMAA0770 0881739–UUUU––RUKGNJU.
ZNR UUUUU
O 291520Z MAR 85
FM CDR 32DAADCOM DARMSTADT GE//AETL–JA//
TO USA JUDICIARY FALLS CHURCH VA//JALS–GA//
BT
UNCLAS
SUBJ: US V WIGGINS
1. REF PHONECON OF CPT BERRY, BRANCH 5, UR OFFICE, AND SFC ELMORE, OSJA, 32D AADCOM ON 29 MAR 86.

2. ACCUSED'S BLDG IS APPROX 300 FT BY 75 FT. COMPANY OCCUPIED EN-TIRE FIRST FLOOR TO INCLUDE SHOWERS, LAUNDRY RM, LATRINE, DAY ROOM, TWO UNIT PHONES. DAY ROOM IS EQUIPPED WITH CHAIRS, COUCHES, COLOR TV, VIDEO, VIDEO GAMES, MAGAZINES, AND MICROWAVE OVEN. NOBODY HAS PRIVATE PHONES IN BARRACKS.

3. ACCUSED WAS NOT REQUIRED TO PERFORM MILITARY DUTIES OR AT-TEND ANY FORMATIONS OR PT AS DIRECTED BY CO.

4. ACCUSED WAS REQUIRED TO SIGN IN EVERY TWO HOURS WITH CQ ON WORK DAYS DURING DUTY HOURS UNLESS HE WAS OUT PROCESSING. AC-CUSED HAD TO SIGN IN EVERY HOUR AT NIGHT ON WORK DAYS UNTIL HE WENT TO BED. ON WEEKENDS ACCUSED HAD TO SIGN IN EVERY FOUR HOURS.

5. NO BED CHECKS WERE MADE AS CQ COULD VIEW ENTIRE HALLWAY FLOOR TO

PAGE 02 RUFTMAA0770 UNCLAS

SEE ANYONE EXITING.

6. THE ACCUSED WAS AUTHORIZED TO WEAR CIVILIAN CLOTHING BUT HAD LIVING OFF POST AND WAS GIVEN TWENTY-FOUR HRS TO BRING PER-SONAL BELONGINGS BACK TO BARRACKS BEFORE RESTRICTION STARTED.

7. THE ACCUSED WAS ALLOWED TO HAVE VISITORS IN DAY ROOM AND COMMON AREAS ONLY.

8. THE ACCUSED WAS ESCORTED TO SEE DEFENSE COUNSEL WHEN RE-QUEST BY THE ACCUSED, OR DEFENSE COUNCEL.

9. CDR DOES NOT REMEMBER WHY ACCUSED COULD NOT VISIT CLUBS OR ESTABLISHMENTS SERVING ALCOHOL OTHER THAN BEING RESTRICTED TO BILLETS. ACCUSED NEEDED CDR'S OOR1SG'S PERMISSION TO LEAVE THE BARRACKS OR KASERNE FOR ANYTHING OTHER THAN NECESSARY MOVE-MENT FOR CLEARING, I.E., DISPENSARY, CHAPEL, BUT ALL MOVEMENT WOULD BE ESCORTED BY AN E5 OR ABOVE. THERE IS A CHAPEL ACROSS THE STREET FROM THE KASERNE AND ACCUSED COULD ATTEND IF RE-QUESTED AND ACCOMPANIED BY ESCORT.

BT

#0770

NNNN

• • • • • • • • • • • • • • • • • • • • • • •

IMMEDIATE • U N C L A S S I F I E D •

• • • • • • • • • • • • • • • • • • • • • • •

APPENDIX C

• • • • • • • • • • • • • • • • • • • • • • •

ROUTINE • U N C L A S S I F I E D •

• • • • • • • • • • • • • • • • • • • • • • •

TOR=093 2215  TOD=093  222047  MSG NBR-08E0-2FD5

RTTUZYUW RUWTAHA1331 0932213-UUUU—RUKGNJU.

ZNR UUUUU

R 041300Z APR 85

FM CDR 1ST INF DIV (M) FT RILEY KS //AFZN-JA-TDS//

TO CUSAJUDICIARY FALLS CHURCH VA //JALS-DA//

BT

UNCLAS

SUBJ: AFFIDAVIT – RONNIE WIGGINS

I WAS NOT REQUIRED TO PERFORM MILITARY DUTIES, ATTEND FORMA-TION, OR PARTICIPATE IN P. T. THE ABOVE WAS ORDERED BY MY COM-

MANDING OFFICER. BEDCHECKS WERE MADE ON ME EVERY 30 MINUTES TO EVERY HOUR. MY CIVILIAN CLOTHES WERE TAKEN. IN ORDER TO SEE MY DEFENSE ATTORNEY, THE ATTORNEY HAD TO MAKE THE REQUEST, AS WHEN I MADE THE REQUEST, IT WAS ALWAYS DENIED. ALL THIS OCCURRED BETWEEN 20 JUNE – 2 JULY 1984.
BT
#1331

NNNN

ROUTINE •U N C L A S S I F I E D•